UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ACCOUNTING RESOURCES, INC.,
    *Plaintiff*,

v.

HISCOX, INC., and UNDERWRITERS
AT LLOYD'S, LONDON,
    *Defendants*.

No. 3:15-cv-01764 (JAM)

**RULING GRANTING MOTION TO DISMISS**

Insurance policies commonly exclude coverage for wrongful acts such as theft or misappropriation of property. This case involves denial of an insurance policyholder's claim that arose from a theft of funds accomplished by some clever criminal computer hackers. Now the defendant insurance companies have moved to dismiss plaintiff's complaint, contending that coverage is precluded by the policy's exclusion for claims that are "based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property." Doc. #21-1 at 32. Plaintiff opposes the motion to dismiss, contending that the exclusion applies only to a theft or misappropriation of funds *by plaintiff or its employees*, rather than to a theft or misappropriation of funds by third persons such as computer hackers. Because I conclude that the plain language of the exclusion extends to the conduct at issue in this case regardless of who has done the thieving or misappropriating, I will grant defendants' motion to dismiss (Doc. #20).

**BACKGROUND**

According to the complaint, plaintiff Accounting Resources, Inc. (ARI) provided bookkeeping and accounting services for Halo International SEZC Ltd. (Halo). One of the services ARI provided was to pay Halo's vendors on Halo's behalf. In December 2014, some unauthorized persons "hacked" into Halo's email account and sent several fraudulent email

requests for ARI to make certain vendor payments on Halo's behalf. ARI did so, causing Halo's bank to wire more than $500,000 to fictional vendors at bank accounts that were presumably controlled by the hackers.

After the loss was discovered, Halo blamed ARI, and ARI in turn filed a claim for insurance coverage with defendants. Defendant Hiscox, Inc., is an insurance agent for defendant Underwriters at Lloyd's London, which issued a professional liability insurance policy to ARI that was in effect at the relevant time in question.

Defendants denied coverage, relying in principal part on an exclusion in the insurance policy for losses from the misappropriation of funds. Under a heading titled "Exclusions – What is not covered" and a subheading titled "Misappropriation of funds," the policy provides in relevant part as follows:

> We will have no obligation to pay any sums under this Coverage Part, including any damages or claim expenses, for any claim:
>     ….
> 16. based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property.

Doc. #21-1 at 31, 32.

After defendants denied coverage, ARI filed this lawsuit for breach of contract. Defendants have now moved to dismiss the complaint, contending that plaintiff's claim is foreclosed by the policy's misappropriation-of-funds exclusion provision.

## DISCUSSION

The principles governing review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are well established. First, the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). But "'[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The principles governing the interpretation of an insurance policy are equally well settled under Connecticut law. A court must interpret the terms of an insurance policy as it would a contract to determine at the outset if the text of the policy makes the parties' intent unambiguously clear. Only if the text of the policy is ambiguous does a court look to other evidence of the parties' intent and in light of the rule that any ambiguity in the policy must be construed in favor of the insured. *See, e.g.*, *Connecticut Ins. Guar. Ass'n v. Drown,* 314 Conn. 161, 187–88 (2014).

Here, defendants persuasively argue that the terms of the policy are clear and unambiguous. The misappropriation-of-funds exclusion extends to any claim that is "based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property." Plaintiff does not dispute that the nature of the wrongful conduct at issue—involving the hackers' fraudulent payment requests and receipt of monies— amounted to a "theft" or "misappropriation" or "conversion" as those terms are used in the policy.[1] Nor does plaintiff dispute that its claim is "based upon" or "aris[es] out of" such wrongful conduct.

Instead, plaintiff claims that the misappropriation-of-funds exclusion applies only if it was plaintiff or one of its employees—rather than some third party like the hackers here—that engaged in the theft or misappropriation of funds. Indeed, I can see why the parties to an

---

[1] Although "theft" traditionally connotes the physical taking of one's property from one's possession, it is well established that "a person is guilty of theft if he purposely obtains property of another by deception." MODEL PENAL CODE, § 223.3.

3

insurance policy that is designed to insure against claims for the negligent performance of professional services might well draw such a distinction between the criminally wrongful conduct of the insured and the criminally wrongful conduct of someone else. After all, the focus of Halo's claim is not that plaintiff as the insured did anything criminally wrong but that it was negligent in the way that it conducted its professional services by failing to prevent the payment of the hackers' fraudulent requests. It could be said that the point—or at least a primary intended purpose—of the misappropriation-of-funds exclusion in the insurance policy was to preclude plaintiff from seeking insurance coverage if its own employees whom it could readily supervise and control were to engage in a criminal defalcation of funds.

      Still, however, the terms of the policy are not ambiguous. The policy's wording says nothing about *who* must engage in the theft or misappropriation of funds. The absence of limitation bespeaks breadth. Although there are reasons why the parties might have wished to agree to the limitation that plaintiff suggests, my task here is not to re-write the policy to embrace limitations that the words of the policy do not suggest. I cannot say that it is irrational or absurd to conclude that the parties contemplated a yet broader exclusion than plaintiff urges to preclude coverage of claims involving theft or other misappropriation of funds, no matter who it was that stole or misappropriated funds.

      Moreover, the exclusion may apply not only to any claim that is "based upon" but also to any claim that may "aris[e] out of" a theft or misappropriation of funds. This wording contemplates that the causal connection between the claim and a theft or misappropriation may well be an indirect one, and that in turn suggests that the exclusion may apply to wrongful conduct by third parties that goes undetected and unexposed by an insured's own agent or employees.

It is of additional significance that a different exclusion in the insurance contract expressly limits its applicability by reference to whether it was the insured—as opposed to a third person—who engaged in the conduct to trigger application of the exclusion. The policy provides an exclusion for certain "intentional acts" of wrongdoing but limits this exclusion solely to such acts that are done by the insured's officers or employees. Doc. #21-1 at 32.

The fact that no corresponding person-specific limitation was included as part of the misappropriation-of-funds exclusion is significant evidence that the scope of the exclusion is not limited to instances of theft or misappropriation of funds by plaintiff or its employees. The parties could plausibly have drafted the policy to exclude only claims of theft or misappropriation by plaintiff or its employees, but this they did not do.

There does not appear to be a decision of the Connecticut state courts that addresses the issue now before me with respect to the scope of the same or similar misappropriation-of-funds exclusion. I have otherwise considered the decisions cited by plaintiff but conclude that they are distinguishable or not persuasive for substantially the reasons set forth by defendants.[2]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Doc. #20) is GRANTED. The Clerk of Court shall close the case.

It is so ordered.

Dated at New Haven this 30th day of September 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[2] *See Stark & Knoll Co., L.P.A. v. ProAssurance Cas. Co.*, 2013 WL 1411229 (N.D. Oh. 2013); *HR Knowledge, Inc. v. Prof'l Ins. & Risk Brokerage, LLC*, 888 N.E.2d 385 (Mass. App. Ct. 2008); *Westport Ins. Corp. v. Energy Fin. Servs., LLC*, 2007 WL 4365373 (W.D. Ky. 2007), *aff'd*, 318 F. App'x 377 (6th Cir. 2009).